UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

LEMUEL COOPER and JOSHUA
HUTCHINSON,

                Plaintiffs,

vs.                             Case No.  3:10-cv-280-J-34MCR

CITY OF STARKE, FLORIDA, et al.,

                Defendants.

_____/

# **O R D E R**

      **THIS CAUSE** is before the Court on Defendants City of Starke, Florida, Ricky Crews, Jeff Johnson, Harvey Rhodin, Gordon Smith, Starke City Police Department and Matthew Watson's Motion to Dismiss Amended Complaint and Supporting Memorandum of Law (Doc. No. 6; Motion) filed on July 23, 2010.[1] Plaintiffs Lemuel Cooper and Joshua Hutchinson filed the Amended Plaintiff's [sic] Response to Defendants['] Motion to Dismiss Amended Complaint, With Supporting Memorandum of Law (Doc. No. 12; Response) on August 30, 2010.  On January 13, 2011, the Court referred this matter to the Honorable Monte C. Richardson, United States Magistrate Judge, for a report and recommendation regarding an appropriate resolution of the Motion.  See Order of Referral (Doc. No. 29).  Thereafter, on February 9, 2011, Magistrate Judge Richardson entered a Report and Recommendation (Doc. No. 30; Report) on the Motion.  In the Report, Judge Richardson recommends that the

---

[1]      While Plaintiffs name "Harvey Rhoden" as a Defendant to this action, Defendants' filings identify this individual as "Harvey Rhodin."  Compare Amended Complaint (Doc. No. 5) with Motion.  Because it is unclear to the Court which spelling is correct, the Court will use the "Rhoden" spelling as that is the version used in the caption of the Amended Complaint.

Court grant, in part, and deny, in part, Defendants' Motion.  See Report at 12.  Although

Judge Richardson advised the parties of their right to file objections to the Report, neither

party has filed any objections and the time for doing so has passed.  See Report at 1 n.1.

Accordingly, this matter is ripe for resolution.

## I.      Standard of Review

        The Court "may accept, reject, or modify, in whole or in part, the findings or

recommendations made by the magistrate judge."  28 U.S.C. § 636(b).  If no specific

objections to findings of facts are filed, the district court is not required to conduct a de novo

review of those findings.  See Garvey v. Vaughn, 993 F.2d 776, 779 n.9 (11th Cir. 1993); see

also 28 U.S.C. § 636(b)(1).  However, the district court must review legal conclusions de

novo.  See Cooper-Houston v. Southern Ry. Co., 37 F.3d 603, 604 (11th Cir. 1994); United

States v. Rice, No. 2:07-mc-8-FtM-29SPC, 2007 WL 1428615, at * 1 (M.D. Fla. May 14,

2007).

## II.     Background[2]

        On June 25, 2008, a vehicle driven by Joshua Hutchinson, with Lemuel Cooper as

a passenger, collided with another vehicle in Starke, Florida.  Amended Complaint (Doc. No.

5) ¶ 8.  Law enforcement officers responded to the collision at approximately 6:30 p.m. and

determined that Cooper had an outstanding warrant for violation of probation stemming from

a fleeing and eluding charge in Bradford County, Florida.  Id. ¶¶ 8-9.  Sergeants Matthew

Watson and Ricky Crews pursued Cooper and Hutchinson into a thick, wooded area in the

---

        [2]      In considering the Motion to Dismiss, the Court must accept all factual allegations in the
Amended Complaint as true, consider the allegations in the light most favorable to the plaintiffs, and
accept all reasonable inferences that can be drawn from such allegations.  Hill v. White, 321 F.3d 1334,
1335 (11th Cir. 2003); Jackson v. Okaloosa Cnty., Fla., 21 F.3d 1531, 1534 (11th Cir. 1994).

vicinity of the collision.  Id. ¶ 10.  Additionally, Captain Harvey Rhoden permitted his two male children, who were not law-enforcement personnel, to go after Plaintiffs on all-terrain vehicles.  Id. ¶ 11.  Watson and Crews apprehended Plaintiffs and brutally beat them, causing various personal injuries to Plaintiffs.  Id. ¶ 12, 14.  In addition, Watson and Crews released K-9 Ori, a police dog handled by Crews, onto Cooper, and K-9 Ori attacked Cooper causing multiple bite wounds.  Id. ¶ 13.  Throughout the incident, Plaintiffs did not possess any weapons, nor did they pose a threat to Defendants or to anyone in the immediate vicinity.  Id. ¶ 15.

Based on the foregoing, on March 31, 2010, Plaintiffs initiated the instant lawsuit against: the City of Starke, Florida (the City); the Starke City Police Department (the Police Department); Bradford County, Florida; Gordon Smith, the former police chief of Starke (Smith); Jeff Johnson, the current police chief of Starke (Johnson); Sergeant Matthew Watson (Watson); Sergeant Ricky Crews (Crews); and Captain Harvey Rhoden (Rhoden). On April 19, 2010, Plaintiffs filed the Amended Complaint (Doc. No. 5) in which they assert causes of action pursuant to 42 U.S.C. § 1983 (Counts I-IV), as well as Florida state law claims (Counts V-IX).  In Counts I, II, III, IV, V, and VII, it appears Plaintiffs are asserting claims against the respective officers in their individual as well as official capacities.[3]  See Amended Complaint at 5, 7-8, 11-12; see also Response at 9-16.  Every Defendant, except Bradford County, Florida, joins in the instant Motion.  In the Motion, Defendants seek

---

[3]        Plaintiffs maintain, and the Magistrate Judge appears to accept, that Count IX asserts a cause of action against Smith and Johnson in their individual capacities.  See Response at 9-10; Report at 4.  Upon review of the Amended Complaint, however, the Court finds that Plaintiffs specifically assert that Count IX is brought against Smith and Johnson in their official capacities only.  See Amended Complaint at 14.

dismissal of the Amended Complaint pursuant to Rule 12(b)(6), Federal Rules of Civil Procedure (Rule(s)), for failure to state a claim upon which relief can be granted. <u>See</u> Motion at 2. Plaintiffs oppose the Motion. <u>See</u> <u>generally</u> Response.[4]

## III.    Discussion

### A.    Standard of Review

In ruling on a motion to dismiss, the Court must accept the factual allegations set forth in the complaint as true. <u>See</u> <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937, 1949 (2009); <u>Swierkiewicz v. Sorema N.A.</u>, 534 U.S. 506, 508 n.1 (2002); <u>see also</u> <u>Lotierzo v. Woman's World Med. Ctr., Inc.</u>, 278 F.3d 1180, 1182 (11th Cir. 2002). In addition, all reasonable inferences should be drawn in favor of the plaintiff. <u>See</u> <u>Omar ex. rel. Cannon v. Lindsey</u>, 334 F.3d 1246, 1247 (11th Cir. 2003) (per curiam). Nonetheless, the plaintiff must still meet some minimal pleading requirements. <u>Jackson v. BellSouth Telecomm.</u>, 372 F.3d 1250, 1262-63 (11th Cir. 2004) (citations omitted). Indeed, while "[s]pecific facts are not necessary[,]" the complaint should "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" <u>Erickson v. Pardus</u>, 551 U.S. 89, 93 (2007) (per curiam) (quoting <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007)). Further, the plaintiff must allege "enough facts to state a claim that is plausible on its face." <u>Twombly</u>, 550 U.S. at 570. "A claim has facial

---

[4]    In the Response, Plaintiffs assert that Defendants make several concessions in their Motion as to the sufficiency of Plaintiffs' allegations in certain of the Counts. <u>See</u> Response at 5, 8-10, 11, 13. However, upon review of Defendants' Motion, the Court does not see the asserted concessions, and instead finds that Defendants specifically challenge the validity of a number of the purportedly conceded claims. <u>Compare</u> Response at 11, 13 (asserting that Defendants concede that Counts II and IV are properly pled against Watson and Crews in their individual capacities), <u>with</u> Motion at 7, 10 (challenging Counts II and IV as to Watson and Crews in their individual capacities). In light of the foregoing, the Court reminds Plaintiffs' counsel of his duty of candor to the Court. In keeping with that duty, counsel should be scrupulous that his representations to the Court are accurate, not only with respect to the positions of the parties, but also as to the holdings of his cited legal authority.

plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 129 S. Ct. at 1949 (citing Twombly, 550 U.S. at 556). A "plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" Twombly, 550 U.S. at 555 (internal quotations omitted); see also Jackson, 372 F.3d at 1262 (explaining that "conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal") (internal citation and quotations omitted). Indeed, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions[,]" which simply "are not entitled to [an] assumption of truth." See Iqbal, 129 S. Ct. at 1949, 1951. Thus, in ruling on a motion to dismiss, the Court must determine whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face[.]'" Id. at 1949 (quoting Twombly, 550 U.S. at 570).[5]

## B.    Official Capacity Claims

In the Report, Magistrate Judge Richardson recommends that this Court dismiss with prejudice Plaintiffs' official capacity claims against Johnson, Smith, Watson, Crews and Rhoden as redundant of their claims against the City. See Report at 4-5. Indeed, "[o]fficial-

---

[5]     The Court notes that prior to Iqbal, Eleventh Circuit precedent instructed that a heightened pleading standard applied in § 1983 actions where "the defendants are individuals who may seek qualified immunity." See Amnesty Int'l, USA v. Battle, 559 F.3d 1170, 1179 (11th Cir. 2009). However, in Randall v. Scott, 610 F.3d 701 (11th Cir. 2010), the Eleventh Circuit determined that "[a]fter Iqbal it is clear that there is no 'heightened pleading standard' as it relates to cases governed by Rule 8(a)(2), including civil rights complaints." See Randall, 610 F.3d at 707-10. Accordingly, the Court will apply the standard of review set forth in Twombly and Iqbal. Id. at 710; see also Nettles v. City of Leesburg Police Dep't, No. 09-14327, 2010 WL 5382914, at *5 (11th Cir. Dec. 22, 2010); but see Harper v. Lawrence Cnty., Ala., 592 F.3d 1227, 1233 (11th Cir. 2010) (applying the heightened pleading standard post-Iqbal); Keating v. City of Miami, 598 F.3d 753, 762-63 (11th Cir. 2010) (same).

capacity suits . . . 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" See Kentucky v. Graham, 473 U.S. 159, 165 (1985) (quoting Monell v. New York City Dep't of Soc. Servs., 436 U.S. 658, 690 n.44 (1978)); Report at 5.  Thus, "[b]ecause suits against a municipal officer sued in his official capacity and direct suits against municipalities are functionally equivalent, there no longer exists a need to bring official-capacity actions against local government officials, because local government units can be sued directly . . . ."  See Busby v. City of Orlando, 931 F.2d 764, 776 (11th Cir. 1991).  Upon review, the Court finds that to the extent Plaintiffs allege § 1983 claims against the officers, Chief Johnson, and former Chief Smith in their official capacities in Counts I-IV of the Amended Complaint, those claims are duplicative of Plaintiffs' § 1983 claim against the City in Count IV.  Compare Counts I-III, with Count IV.  Likewise, Plaintiffs allege the same Florida state law causes of action against both the officers and the City. Compare Counts V, VII, with Counts VI and VIII; see also Count IX.  As such, permitting Plaintiffs to pursue claims against both the City and the officers sued in their official capacities as defendants in this case would be redundant and needlessly confusing.  See Busby, 931 F.2d at 776.  Thus, to the extent the Amended Complaint asserts claims against individual defendants in their official capacities, those claims are due to be dismissed.[6]

---

[6]        The Court notes that after reviewing the Amended Complaint and Plaintiffs' Response, it appears that Plaintiffs may be confused about what it means to assert an "official capacity" claim.  In Counts I, II, III, IV, V, and VII of the Amended Complaint, Plaintiffs assert claims against the officers "individually and under color of state law."  See Amended Complaint at 5, 7-8, 11-12.  It appears Plaintiffs intend the phrase "under color of state law" to mean that those claims are also asserted against the officers in their official capacities, see generally Response, although only Count IX actually includes the term "official capacity."  See Amended Complaint at 14.  In the Response, Plaintiffs do not address Defendants' redundancy argument but instead assert that the official capacity claims should not be dismissed because "[d]ismissing charges against a Police Officer in his official capacity requires an exploration of the factual issue of whether or not he was 'acting within the scope of his authority.'" See
(continued...)

### C.      The Starke City Police Department

Next, the Magistrate Judge recommends that the Court dismiss Plaintiffs' claims against the Police Department with prejudice.  <u>See</u> Report at 6.  Judge Richardson found that the Police Department is "not a legal entity, and therefore, is not subject to suit or liability under section 1983."  <u>Id.</u> at 6.  Indeed, the Eleventh Circuit recognizes that "police departments are not usually considered legal entities subject to suit."  <u>Dean v. Barber</u>, 951 F.2d 1210, 1214 (11th Cir. 1992).  Nevertheless, the <u>Dean</u> Court instructed that "'capacity to sue or be sued shall be determined by the law of the state in which the district court is held.'"  <u>Id.</u> at 1214 (quoting Rule 17(b)).  In Florida, "'where a police department is an integral

---

[6](...continued)
Response at 12, 14. Additionally, Plaintiffs argue that the official capacity claims should not be dismissed because "at the time of the events in question" the individual officer exerted "supervisory control over the municipality of Starke's Police Department," <u>see id.</u> at 9, 10, or "was acting in his official capacity as a member of Starke's Police Department." <u>Id.</u> at 16. However, Plaintiffs' arguments are simply irrelevant to whether the official capacity claims are duplicative of Plaintiffs' claims against the City.

As explained above, a suit against an officer in his "official capacity" is the same as a suit against the municipality he represents. <u>Cooper v. Dillon</u>, 403 F.3d 1208, 1221 n.8 (11th Cir. 2005). "In other words, a plaintiff in an action against a government official in his personal capacity can recover only against the official's personal assets. The assets of the governmental entity are not accessible. The reverse is true in an official capacity lawsuit." <u>Yeldell v. Cooper Green Hosp., Inc.</u>, 956 F.2d 1056, 1060 (11th Cir. 1992). Moreover, "to establish <u>personal</u> liability in a § 1983 action, it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right. . . . [I]n an official-capacity suit the entity's 'policy or custom' must have played a part in the violation of federal law." <u>Graham</u>, 473 U.S. at 166 (citations omitted).

As such, "official capacity" does not mean the same thing as "under color of state law." An official acts "under color of law" when he "exercises the authority that he possesses by virtue of his position" with the government entity he represents. <u>Christman v. Walsh</u>, No. 10-14127, 2011 WL 721302, at *3 (11th Cir. Mar. 2, 2011). Indeed, individual or personal capacity suits under § 1983 "seek to impose <u>personal</u> liability upon a governmental official for actions he takes <u>under color of state law</u>." <u>Graham</u>, 473 U.S. at 165 (emphasis added). Thus, to establish <u>personal</u> liability in a § 1983 action, a plaintiff <u>must</u> establish that the official was acting <u>under color of state law</u> when he caused the deprivation of a federal right. <u>See Id.</u> at 166 (emphasis added). In sum, a claim seeking to hold an officer <u>personally</u> liable for his actions taken under color of state law, that is, actions taken by virtue of the authority he possesses in his official position, is a claim against the officer in his <u>individual</u> capacity. In contrast, where a plaintiff seeks to hold the entity that the official represents liable for those actions, by virtue of the entity's policy or customs which played a part in the violation, that is a claim against the officer in his <u>official</u> capacity, and more appropriately alleged as a claim directly against the entity itself. <u>See Busby</u>, 931 F.2d at 776.

part of the city government as the vehicle through which the city government fulfills its policing functions it is not an entity subject to suit.'" See Florida City Police Dep't v. Corcoran, 661 So. 2d 409, 410 (Fla. 3d Dist. Ct. App. 1995) (quoting Eddy v. City of Miami, 715 F. Supp. 1553, 1556 (S.D. Fla. 1989)). As such, Plaintiffs maintain that the Police Department has not established whether or not it is a legal entity subject to suit, and that "'capacity to be sued is a factual issue that cannot be resolved at the motion to dismiss stage.'" See Response at 8 (quoting Rodriguez v. City of Clermont, No. 5:08-cv-204-Oc-10GRJ, 2009 WL 395737, at *3 (M.D. Fla. Feb. 17, 2009)); see also Hatten v. Davis, No. 203CV114FTM29DNF, 2005 WL 3186183, at *1-2 (M.D. Fla. Nov. 29, 2005).

However, "Florida courts have consistently found that City Police Departments are not entities capable of suit." See Blandin v. Cnty. of Charlotte, No. 2:07-cv-691-FtM-29DNF, 2009 WL 2634419, at *4 (M.D. Fla. Aug. 24, 2009). Moreover, this finding is frequently made at the motion to dismiss stage in the proceedings. See id.; Williams v. Miami-Dade Police Dep't, 297 F. App'x 941, 945 (11th Cir. 2008) (affirming the dismissal of a police department because "[u]nder Florida law, police departments are not legal entities amendable to suit"); see also Griffin v. Hillsborough Cnty. Sheriff, No. 8:09-cv-1440-T-23TGW, 2009 WL 4547054, at *2 (M.D. Fla. Nov. 30, 2009); Radcliffe v. Ft. Myers Police Dep't, No. 2:08-cv-663-FtM-29DNF, 2009 WL 153138, at *2 (M.D. Fla. Jan. 22, 2009). Indeed, the Charter for the City of Starke gives the City the power and authority "[t]o exercise full police powers and establish and maintain a division or department of police, under the control and supervision of the city commissioners . . . ." See City of Starke, Fla., Code of Ordinances Sec. 6(o) (2006). Accordingly, the Court concludes that the City fulfills its

policing functions through the Police Department and, as such, the Police Department is an integral part of the city government and not an entity subject to suit.  Therefore, the Court will adopt Judge Richardson's recommendation as to this Defendant, and dismiss the Police Department from this action.

### D.      Failure to Intervene - Count II

In the Report, Magistrate Judge Richardson finds that Count II of Plaintiffs' Amended Complaint adequately states a claim for failure to intervene against Watson and Crews in their individual capacities.  See Report at 6-7.  Accordingly, Judge Richardson recommends that the Court deny Defendants' Motion to the extent they seek dismissal of that claim.  Id. at 7.  After de novo review, the Court agrees.  See Velazquez v. City of Hialeah, 484 F.3d 1340, 1341 (11th Cir. 2007) (per curiam).  As such, accepting the allegations in Plaintiffs' Amended Complaint as true, the Court will deny Defendants' Motion to the extent they seek dismissal of Count II against Watson and Crews in their individual capacities.

### E.      Supervisory Liability - Count III

In Count III of the Amended Complaint, Plaintiffs assert a § 1983 claim against Gordon Smith, the City's former police chief, in his individual capacity, under a theory of "supervisory liability."[7]  See Amended Complaint at 7.  Plaintiffs allege that Smith served as "the supervisory official at the Starke City Police Department with oversight responsibility for the hiring, training, instruction, supervision and discipline of Defendants Watson and Crews."

---

[7]       Although Count III of the Amended Complaint is specifically titled as a claim against Smith in his individual capacity, see Amended Complaint at 7, Plaintiffs assert in the Response that Count III names Smith in his official capacity only.  See Response at 9.  It appears that this inconsistency stems from Plaintiffs' misunderstanding of the term "official capacity" as discussed above.  Thus, the Court will consider whether Count III adequately states a claim against Smith in his individual capacity.

See id.  Defendants argue that Plaintiffs' allegations on this claim consist of "unsupported conclusions of law and/or mixed fact and law allegations which are insufficient to satisfy [the Iqbal standard] and prevent dismissal."   Motion at 9.   Although the Magistrate Judge concludes that Plaintiffs' allegations are sufficient to state a plausible claim for relief on the basis of supervisory liability, see Report at 9, upon review, this Court must disagree.

"It is well established in this [C]ircuit that supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability."  See Hartley v. Parnell, 193 F.3d 1263, 1269 (11th Cir. 1999) (internal quotations and citations omitted).  "Instead, supervisory liability under § 1983 occurs either when the supervisor personally participates in the alleged unconstitutional conduct or when there is a causal connection between the actions of a supervising official and the alleged constitutional violation."  See Cottone v. Jenne, 326 F.3d 1352, 1360 (11th Cir. 2003).  Because Plaintiffs do not assert that Smith personally participated in the alleged unconstitutional conduct committed by Watson and Crews, see generally Amended Complaint, in order to state a claim for relief against Smith on the basis of supervisory liability, Plaintiffs must allege that a causal connection exists between Smith's actions and the constitutional violations allegedly committed by Watson and Crews.  See Cottone, 326 F.3d at 1360.  The requisite causal connection may be established  "'when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so,'  or when the supervisor's improper 'custom or policy ... resulted in deliberate indifference to constitutional rights.'"  Gonzalez v. Reno, 325 F.3d 1228, 1234 (11th Cir. 2003) (quoting Rivas v. Freeman, 940 F.2d 1491, 1495 (11th

Cir.1991)) (internal citation omitted); see also Doe v. Sch. Bd. of Broward Cnty., Fla., 604 F.3d 1248, 1266 (11th Cir. 2010).  "The deprivations that constitute widespread abuse sufficient to notify the supervising official must be obvious, flagrant, rampant, and of continued duration, rather than isolated occurrences." Brown v. Crawford, 906 F.2d 667, 671 (11th Cir. 1990).  The necessary causal connection may also be demonstrated through "facts which support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so." See Gonzalez, 325 F.3d at 1235.  "The standard by which a supervisor is held liable in [his] individual capacity for the actions of a subordinate is extremely rigorous." See id. at 1234 (internal quotations and citation omitted).

In some circumstances, "an allegation of a 'failure to train' can be the basis for liability under § 1983." See City of Canton v. Harris, 489 U.S. 378, 387 (1989).  In order to prevail on a failure to train or failure to supervise claim, a plaintiff must establish that the supervisor has a policy of failing to adequately train or supervise employees and that this policy causes the employees to violate the plaintiff's constitutional rights.  See Gold v. City of Miami, 151 F.3d 1346, 1350 (11th Cir. 1998) (discussing municipal liability in the context of a failure to train or supervise claim); West v. Tillman, 496 F.3d 1321, 1331 & n.16 (11th Cir. 2007) (citing the reasoning in Gold in the context of a failure to train claim raised against supervisors). As a supervisor will rarely have an express written or oral policy of inadequately training or supervising his or her employees, a supervisor's failure to train and/or supervise his or her employees amounts to an actionable policy under § 1983 where the plaintiff demonstrates that the supervisor's failure to train and/or supervise amounts to deliberate indifference to

the rights of citizens with whom the supervisor's employees come into contact.  See Gold, 151 F.3d at 1350; see also Battiste v. Sheriff of Broward Cnty., 261 F. App'x 199, 202 (11th Cir. 2008) (per curiam) ("A supervisory official is liable under § 1983 when 'his failure to train amounts to deliberate indifference to the rights of persons with whom the subordinates come into contact; and the failure has actually caused the injury of which the plaintiff complains.'" (quoting Belcher v. City of Foley, Ala., 30 F.3d 1390, 1397 (11th Cir. 1994))).  A failure to train amounts to deliberate indifference when "the need for more or different training is obvious, such as when there exists a history of abuse by subordinates that has put the supervisor on notice of the need for corrective measures, and when the failure to train is likely to result in the violation of a constitutional right." Belcher, 30 F.3d at 1397-98 (internal citations omitted).

In the Amended Complaint, Plaintiffs allege that Smith caused the deprivation of Plaintiffs' constitutional rights by:

> a.  Failing to supervise properly the training and conduct of Sheriff's Deputies, including Watson and Crews, regarding the constitutional limitations on the use of force;
> b.   Failing to enforce the laws of Starke City, the State of Florida and the provisions of the United States Constitution concerning the use [sic] by members of the police force while making the arrest, and;
> c.  Issuing vague, confusing, and contradictory policies concerning the use of force that are inconsistent with the requirements of the Fourth and Fourteenth Amendments of the United States Constitution.

See Amended Complaint at 7-8.  In the absence of any factual enhancement, the Court finds that these vague and conclusory allegations to be wholly insufficient to satisfy the standards set forth in Iqbal.  Plaintiffs do not identify the specific policies at issue, or allege any facts to support Plaintiffs' conclusion that the policies are "vague, confusing, and contradictory"

and "inconsistent with the requirements" of the Constitution. Id. at 8. Nor do Plaintiffs set

forth any facts as to how Smith has failed "to enforce the laws." To the extent Plaintiffs

contend that Smith is subject to supervisory liability on the basis of a "failure to train and/or

supervise," Plaintiffs have failed to identify any specific deficiency or deficiencies in Smith's

training and/or supervision of Watson and Crews. Moreover, Plaintiffs do not adequately

allege that the failure to train amounted to deliberate indifference because Plaintiffs do not

set forth any facts demonstrating that Smith had notice of a need to train and/or supervise.

See Amended Complaint at 7-8; Cottone, 326 F.3d at 1362 (finding that the plaintiffs failed

to establish the necessary causal connection between the supervisors and the

unconstitutional conduct where supervisors were not on notice of the need for further training

or supervision). Although, in their introductory paragraphs Plaintiffs assert in a conclusory

fashion that Defendants have "tolerated, condoned and encouraged a pattern of brutality and

excessive force," id. at 2, the Amended Complaint is devoid of any facts in support of this

contention. Cf. Williams v. Santana, 340 F. App'x 614, 617-18 (11th Cir. 2009) (per curiam).

Thus, the Court finds that Plaintiffs' vague references to unidentified failures, policies, and

patterns are not sufficient to withstand a motion to dismiss. See Sada v. City of Altamonte

Springs, No. 6:09-cv-506-Orl-31KRS, 2009 WL 3241984, at *3 (M.D. Fla. Oct. 5, 2009)

("Such a mechanical recitation of the elements of a deliberate indifference claim is

insufficient to survive a motion to dismiss."). As the Supreme Court instructs, "[a] pleading

that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of

action will not do.' Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of

'further factual enhancement.'" Iqbal, 129 S. Ct. at 1949 (quoting Twombly, 550 U.S. at 555). Accordingly, Count III is due to be dismissed without prejudice.

### F. Municipal Liability - Count IV

In Count IV of the Amended Complaint, Plaintiffs assert a § 1983 claim against the City of Starke, as well as Watson, Crews, Rhoden, Smith and Johnson, individually, under the heading "municipal liability." See Amended Complaint at 8. Because Count IV predominately consists of legal terms and conclusory statements, and is almost entirely devoid of factual development, it is difficult for the Court to discern the exact basis for this claim. Magistrate Judge Richardson recommends that the Court dismiss Count IV of the Amended Complaint without prejudice because "Plaintiffs' assertions are not supported by factual allegations which describe or particularly identify any policies and practices which Plaintiffs' claim violated their constitutional rights . . . ." See Report at 10. Upon review, this Court agrees.[8]

Similar to the principles for supervisory liability, a municipality also may not be held liable for constitutional deprivations on the theory of respondeat superior. See Denno v. Sch. Bd. of Volusia Cnty., 218 F.3d 1267, 1276 (11th Cir. 2000). Rather, under the directives of Monell, a plaintiff must allege that the constitutional deprivation at issue was the result of "an

---

[8]      As Judge Richardson noted, see Report at 9 n.5, it is unclear why Plaintiffs asserted a "municipal liability" claim against the police officers in their individual capacities. Indeed, Count IV does not include any allegations as to the conduct of Watson, Crews, or Rhoden. To the extent Plaintiffs are asserting this claim against Johnson and Smith in their official capacity, see id. ¶¶ 37, 40, it is duplicative of the claim against the City, as previously discussed. To the extent Plaintiffs are attempting to assert a claim against Police Chief Johnson in his individual capacity for implementing unconstitutional policies that caused Plaintiffs' injuries, this claim appears to be without a factual basis because Johnson was not the police chief at the time of the incident. See Amended Complaint ¶ 30. Finally, to the extent Plaintiffs intended to assert a claim in Count IV against former Police Chief Smith, in his individual capacity, based on a theory of supervisory liability for implementing allegedly unconstitutional policies or practices and a failure to train, that cause of action appears to be duplicative of the claim asserted in Count III.

official government policy, the actions of an official fairly deemed to represent government policy, or a custom or practice so pervasive and well-settled that it assumes the force of law." See Denno, 218 F.3d at 1276 (citations omitted).  "A custom is a practice that is so settled and permanent that it takes on the force of law." Sewell v. Town of Lake Hamilton, 117 F.3d 488, 489 (11th Cir. 1997) (citation omitted).  "A policy is a decision that is officially adopted by the municipality, or created by an official of such rank that he or she could be said to be acting on behalf of the municipality." Id. (citation omitted).  The policy requirement is designed to "'distinguish acts of the municipality from acts of employees of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible.'" Grech v. Clayton Cnty., 335 F.3d 1326, 1329 n.5 (11th Cir. 2003) (en banc) (quotation omitted).  Last, "[t]o hold the municipality liable, there must be 'a direct causal link between [its] policy or custom and the alleged constitutional deprivation.'" Snow ex rel. Snow v. City of Citronelle, 420 F.3d 1262, 1271 (11th Cir. 2005) (quotation omitted).

In some circumstances, "the failure to provide proper training may fairly be said to represent a policy for which the city may be held liable if it actually causes injury." City of Canton, 489 U.S. at 390.  Failure to train can lead to municipal liability "only where a municipality's failure to train its employees in a relevant respect evidences a 'deliberate indifference' to the rights of its inhabitants [such that the failure to train] can be properly thought of as a city 'policy or custom' that is actionable under § 1983." Id. at 388-89 (alteration added).  Thus, in order to assert such a claim, a plaintiff must "present some evidence that the municipality knew of a need to train and/or supervise in a particular area and the municipality made a deliberate choice not to take any action." Gold, 151 F.3d at

-15-

1350.  The Eleventh Circuit has repeatedly held that "without notice of a need to train or supervise in a particular area, a municipality is not liable as a matter of law for any failure to train or supervise." Id. at 1351.  Indeed, "the need for such training must be plainly obvious to [City] decisionmakers," such as where there is "evidence of a history of widespread prior abuse." Wright v. Sheppard, 919 F.2d 665, 674 (11th Cir. 1990) (alteration added); see also Rocker v. City of Ocala, Fla., No. 09-13827, 2009 WL 4365226, at *2 (11th Cir. Dec. 3, 2009) (per curiam) (unpublished).[9]

Plaintiffs' allegations appear to assert municipal liability on the basis of two theories. First, Plaintiffs allege that the City had in effect "de facto policies, practices and customs" which caused the alleged constitutional violation, see Amended Complaint ¶¶ 35-36.  In support, Plaintiffs list the following "de facto" policies, practices and customs:

> (a) the failure to properly screen, supervise, discipline, transfer counsel and/or otherwise control police officers engaged in the excessive and unjustified use of force, particularly those police officers who are repeatedly accused of such acts; (b) the failure to properly train and supervise police officers in the use of excessive force; (c) the failure to require Defendant Smith to promulgate procedures and policies for the use of force that is consistent with the Fourth and Fourteenth Amendments to the United States Constitution; (d) permitting the use of unreasonable force and for racial profiling to exist and to be followed by the Starke City Police Department, and (e) the police "code of silence" wherein police officers regularly coverup police use of excessive and

---

[9]  The Court notes that the Supreme Court, in dictum, has left open the possibility that "a need to train could be 'so obvious,'" that a city could be held liable even without a pattern of prior constitutional violations.  See Gold, 151 F.3d at 1352 (citing City of Canton, 489 U.S. at 390).  The Supreme Court offered the example of the need to train officers in the use of deadly force where the officers are provided firearms.  City of Canton, 489 U.S. at 390 n.10.  Although Plaintiffs allege that the "need to adequately train and/or supervise law enforcement officers in the constitutional limitations on the use of excessive force is so obvious that the inadequacy of such training amounted to deliberate indifference," see Amended Complaint ¶ 38, they do not allege any facts as to what specific inadequacies were obvious.  Because an "obvious need" claim "must be based on a 'particular glaring omission in a training regimen' and not merely on 'possible imperfections' in a training program," the Court finds that the Amended Complaint does not set forth sufficient facts to state a claim for failure to train based on this theory.  See West, 496 F.3d at 1331 n.16 (quoting Gold, 151 F.3d at 1352).

> unjustified force by telling false and incomplete stories, <u>inter</u> <u>alia</u>, in sworn testimony, official reports, in statements, if any, to the Police Department, and in public statements, all of which are designed to over for and/or falsely exonerate the accused officers.

<u>Id.</u> ¶ 36.   Second, Plaintiffs assert that the City "failed to effectively screen, hire, train, supervise and discipline" the law enforcement officers with respect to racial bias and the use of excessive force, <u>id.</u> ¶¶ 37-38.     Upon review, the Court concludes that Plaintiffs' boilerplate and conclusory allegations of municipal policy or practice—devoid of factual development—are insufficient to state a § 1983 claim.  Plaintiffs fail to identify any <u>actual</u> policies or decision makers and, in describing only the single incident of force involving Plaintiffs, fail to offer any facts to support the existence of a widespread custom.  <u>See</u> <u>Iqbal</u>, 129 S. Ct. at 1949; <u>Twombly</u>, 550 U.S. at 570; <u>see also</u> <u>Harvey v. City of Stuart</u>, 296 F. App'x 824, 826 (11th Cir. 2008)[10] (affirming dismissal of § 1983 action against municipality because the plaintiff "failed to identify any policy or custom that caused a constitutional violation, and his vague and conclusory allegations were insufficient to support the complaint"); <u>Reyes v. City of Miami Beach</u>, No. 07-22680-CIV, 2007 WL 4199606, at * 6 (S.D. Fla. Nov. 26, 2007) (recognizing that although there is no heightened pleading standard for § 1983 claims against municipalities, plaintiffs must nevertheless satisfy <u>Twombly</u>'s generally applicable basic pleading standard, and holding dismissal warranted because "[i]n recounting only their own alleged incident, offering no other facts to support their claim that the City had an official policy or widespread custom that was directly responsible for their injuries, and failing to identify even one responsible final City policymaker, Plaintiffs have failed to raise their

---

[10]     "Although an unpublished opinion is not binding . . ., it is persuasive authority." <u>United States v. Futrell</u>, 209 F.3d 1286, 1289 (11th Cir. 2000) (per curiam).

section 1983 claim against the City above the speculative level").  Likewise, with respect to

Plaintiffs' allegation that the City failed to train and/or supervise the officers, Plaintiffs do not

offer any <u>facts</u> demonstrating how the training was inadequate or that the need for additional

training was obvious.  As previously discussed, Plaintiffs' general allegation that a pattern

of abuse existed is insufficient to satisfy the standards of <u>Twombly</u> and <u>Iqbal</u>.  <u>See</u> <u>supra</u> at

12.  Accordingly, the Court will dismiss the claims set forth in Count IV of the Amended

Complaint without prejudice.[11]

### G.    Negligence - Counts VII and VIII

In the Report, the Magistrate Judge recommends, pursuant to section 768.28(9)(a)

of the Florida Statutes, that the Court dismiss without prejudice Plaintiffs' negligence claim

against Watson and Crews in their individual capacities.  <u>See</u> Report at 10-11.  Florida

Statutes, section 768.28(9)(a) provides that:

> [n]o officer, employee, or agent of the state or of any of its subdivisions shall
> be held personally liable in tort or named as a party defendant in any action for
> any injury or damage suffered as a result of any act, event, or omission of
> action in the scope of her or his employment or function, unless such officer,
> employee or agent acted in bad faith or with malicious purpose or in a manner
> exhibiting wanton and willful disregard of human rights, safety, or property.

<u>See</u> Fla. Stat. § 768.28(9)(a).  Judge Richardson finds that because Plaintiffs do not

specifically allege in Count VII that Watson and Crews "acted in bad faith or with malicious

---

[11]     To the extent Plaintiffs are asserting a § 1983 claim based on allegedly inadequate hiring practices, <u>see</u> Amended Complaint ¶ 37, the Amended Complaint is devoid of any facts sufficient to state a plausible claim for relief under the standard set forth in <u>Bd. of Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown</u> (<u>Bryan Cnty.</u>), 520 U.S. 397, 411 (1997)).  <u>See</u> <u>Bryan Cnty.</u>, 520 U.S. at 412 (instructing that a finding of culpability "must depend on a finding that <u>this</u> officer was highly likely to inflict the <u>particular</u> injury suffered by the plaintiff"); <u>see</u> <u>also</u> <u>Griffin v. City of Opa-Locka</u>, 261 F.3d 1295, 1313 (11th Cir. 2001).  Indeed, Plaintiffs do not set forth any factual allegations as to the backgrounds of Watson and Crews.  <u>See</u> <u>generally</u> Amended Complaint.

purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property," the negligence claim is due to be dismissed.[12]  See Report at 11.  The Magistrate Judge then reasons that because the underlying negligence claim against Watson and Crews should be dismissed, the claim against the City based on the principle of respondeat superior should also be dismissed.  See id.  Although the Court agrees that the negligence claims are due to be dismissed without prejudice, the Court reaches this conclusion for different reasons.[13]  See Lewis v. City of St. Petersburg, 260 F.3d 1208, 1262 (11th Cir. 2001) ("When a state or its subsidiary is sued in negligence, a court should first determine whether the circumstances alleged would subject a private person to liability under Florida law.").

"The Florida courts have consistently and unambiguously held that 'it is not possible to have a cause of action for negligent use of excessive force because there is no such thing as the negligent commission of an intentional tort.'"  See Secondo v. Campbell, 327 F. App'x 126, 131 (11th Cir. 2009) (per curiam) (quoting City of Miami v. Sanders, 672 So. 2d 46, 48

---

[12]  The Court notes that in Count VII Plaintiffs do allege that Watson and Crews' conduct amounted to "gross negligence."  See Amended Complaint ¶ 56.  However, it appears that under Florida law a state employee's conduct "must be something greater than gross negligence in order to be actionable under section 768.28(9)(a)."  See Ondrey v. Patterson, 884 So. 2d 50, 54 (Fla. 2d Dist. Ct. App. 2004).

[13]  The Court specifically declines to adopt the portion of the Report that states that the City cannot be liable under a theory of respondeat superior if the underlying negligence claims against Watson and Crews are dismissed on the basis of sovereign immunity.  See Report at 10-11.  Indeed, section 768.28(9)(a) of the Florida Statutes specifically contemplates that a municipality will be held liable for the negligent acts of its employees where the employees themselves are immune.  See Fla. Stat. § 768.28(9)(a) ("The exclusive remedy for injury or damage suffered as a result of an act, or omission of an officer . . . of the state or any of its subdivisions . . . shall be by action against the governmental entity . . . of which the officer . . . is an employee, unless such act or omission was committed in bad faith or with malicious purpose or in a manner exhibiting wanton and willful disregard of human rights, safety, or property."); see also Lewis, 260 F.3d at 1262-64; McGhee v. Volusia Cnty., 679 So. 2d 729, 732-33 (Fla. 1996) ("In any given situation either the agency can be held liable under Florida law, or the employee, but not both.").

(Fla. 3d Dist. Ct. App. 1996) review denied, 683 So. 2d 484 (Fla. 1996)).  However, "'a separate negligence claim based upon a distinct act of negligence may be brought against a police officer in conjunction with a claim for excessive use of force, . . . [but] the negligence component must pertain to something other than the actual application of force during the course of arrest.'" Id. (quoting Sanders, 672 So. 2d at 48).  For example, "a cause of action for the negligent handling of a firearm and the negligent decision to use a firearm separate and distinct from an excessive force claim" is recognized under Florida law.  See Lewis v. City of St. Petersburg, 260 F.3d 1260, 1263 (11th Cir. 2001); see also Wyatt v. City of Jacksonville, No. 3:08-cv-264-J-32TEM, 2008 WL 2916358, at *1 (M.D. Fla. July 29, 2008) (finding that the plaintiff adequately alleged a cause of action for negligent handling of a police dog).

    In the Amended Complaint, Plaintiffs do not set forth any acts of negligence which "pertain to something other than the actual application of force during the course of arrest." See Secondo, 327 F. App'x at 131.  Indeed, Plaintiffs allege that the negligence claims are based on the duty to "refrain from illegal and intentional misconduct," "refrain from using excessive force," and "exercise reasonable care in attempting to serve arrest warrants." See Amended Complaint at 12-13 (emphasis added).  Moreover, Plaintiffs allege that Watson and Crews breached these duties by "beating, punching and causing severe physical pain to Plaintiffs," "releasing K-9 'Ori' to attack Plaintiffs and bite Plaintiffs multiple times," and "failing to exercise reasonable care in the attempt to serve [an] arrest warrant upon Plaintiff Cooper." Id. at 13.  Accordingly, the "negligence" allegations are based entirely on Watson and Crews' intentional use of force in apprehending Plaintiff.  Because Plaintiffs have not

alleged a "separate and distinct" act of negligence, Counts VII and VIII are due to be dismissed.  However, in an abundance of caution, the Court will dismiss the negligence claims without prejudice in the event that Plaintiffs may be able to allege negligent conduct separate and distinct from the excessive force claim.[14]

### H.    Punitive Damages

In the Report, Judge Richardson determined that Plaintiffs' requests for punitive damages against the City are barred by sovereign immunity.  See Report at 12.  Upon de novo review of the law, this Court agrees and will adopt the Magistrate Judge's recommendation as to punitive damages.  See Fla. Stat. §§ 768.28(5) & (2); City of Newport v. Fact Concerts, Inc., 453 U.S. 247, 271 (1981) ("[A] municipality is immune from punitive damages under 42 U.S.C. § 1983.").

## IV.    Conclusion

In light of the foregoing, the Court determines that Defendants' Motion is due to be granted, in part, and denied, in part.  Plaintiffs' § 1983 claims against Smith, under a theory of supervisory liability, and against the City, under a theory of municipal liability, are due to be dismissed without prejudice.  The Court will also dismiss without prejudice Plaintiffs' negligence claims against Watson, Crews, the City and Bradford County.  In addition, the

---

[14]       The Court notes that pursuant to section 768.28(9)(a), a claim for simple or gross negligence against Watson and Crews would be barred by sovereign immunity.  See Fla. Stat. § 768.28(9)(a); Ondrey, 884 So. 2d at 54; Report at 10-11.  Nevertheless, the Court declines to dismiss the negligence claim against Watson and Crews with prejudice at this time because of the possibility that Plaintiffs could state a viable claim for negligence against Watson and Crews if the allegations demonstrate willful and wanton misconduct.  See Ondrey, 884 So. 2d at 55-56 (Altenbernd, C.J., dissenting); Lemay v. Kondrk, 860 So. 2d 1022, 1024-26 (Fla. 5th Dist. Ct. App. 2003) (Orfinger, J., dissenting).  Plaintiffs are cautioned, however, that asserting mere labels and conclusions will not suffice, to state a claim they must set forth sufficient facts demonstrating this type of misconduct.  Additionally, given the allegations of the Amended Complaint, Plaintiffs' counsel is cautioned to carefully review the facts and law, as required by Rule 11, before seeking to assert any such claim in the future.

official capacity claims against Watson, Crews, Johnson, Smith and Rhoden are due to be dismissed with prejudice, as are the claims against the Police Department.  Finally, the Court will also dismiss with prejudice Plaintiffs' claim for punitive damages against the City.  In all other respects, the Motion is due to be denied.  As such, the following claims will remain pending in this action: 1) a § 1983 claim for excessive force against Watson and Crews in their individual capacities (Count I), 2) a § 1983 claim for failure to intervene against Watson and Crews in their individual capacities (Count II), 3) assault and battery under Florida law against Watson and Crews in their individual capacities (Count V), 4) a <u>respondeat</u> <u>superior</u> claim for assault and battery against the City and Bradford County (Count VI), and 5) a Florida law claim for negligent hiring, training and supervision against the City and Bradford County (Count IX).  Accordingly, it is

**ORDERED**:

1.  The Magistrate Judge's recommended resolutions in Parts B.1-3, and 5-8 of the Report and Recommendation (Doc. No. 30) are **ADOPTED** to the extent they are consistent with the foregoing.

2.  Defendants City of Starke, Florida, Ricky Crews, Jeff Johnson, Harvey Rhoden, Gordon Smith, Starke City Police Department and Matthew Watson's Motion to Dismiss Amended Complaint and Supporting Memorandum of Law (Doc. No. 6) is **GRANTED, in part, and DENIED, in part.**

    A.     Defendants' Motion is **GRANTED** to the extent that:

        i.     The Official Capacity claims asserted against Watson, Crews, Smith, Johnson, and Rhoden are **DISMISSED**.

        ii.     Plaintiffs' claims against the Starke City Police Department are **DISMISSED**.

        iii.     Counts III, IV, VII, and VIII of the Amended Complaint are **DISMISSED without prejudice.**

        iv.     Plaintiffs' claims for punitive damages against the City of Starke are **DISMISSED**.

    B.     In all other respects, Defendants' Motion is **DENIED**.

**DONE AND ORDERED** at Jacksonville, Florida on March 23, 2011.

*Marcia Morales Howard*

**MARCIA MORALES HOWARD**
United States District Judge

lc11

Copies to:

Hon. Monte C. Richardson

Counsel of Record

Pro Se Parties

-23-